**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 14 2018**

JEFFREY P. COLWELL
CLERK

Civil Action No.    **18 - CV - 00608**

(To be supplied by the court)

WYATT T. HANDY JR.

_____, Plaintiff

v.

UBER TECHNOLOGIES INC.,

_____,

TRAVIS KALANICK, _____,

LIANE HORNSEY, _____,

ANDREW COULTER _____, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in
the space provided, please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names. The names of the defendants listed in the above
caption must be identical to those contained in Section B. Do not include addresses here.*)

---

**COMPLAINT**

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Wyatt T. Handy Jr.        P.O. Box 221531, Denver, CO 80222

(Name and complete mailing address)

(720) 461-0787

(Telephone Number and E-mail address if known)

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:  Uber Technologies Inc., 4355 Market St., San Francisco CA 94103

(Name and complete mailing address)

(Telephone Number and e-mail address if known)

Defendant 2:  Travis Kalanic, 4355 Market St., San Francisco, CA 94103

(Name and complete mailing address)

(Telephone number and e-mail address if known)

Defendant 3:  Liane Hornsey, 4355 Market St., San Fransisco, CA 94103

(Name and complete mailing address)

(Telephone number and e-mail address if known)

Defendant 4:  Andrew Coulter, 4665 A Paris St., Denver, CO 80239

(Name and complete mailing address)

(Telephone number and e-mail address if known)

2

## C.   JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

  X   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

  List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

  28 U.S.C. § 1343, 42 U.S.C. § 1983, 42 U.S.C. § 1981, TITLE VII; State Tort Laws.

  _____

  X   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

  Plaintiff is a citizen of the State of  COLORADO

  If Defendant 1 is an individual, Defendant 1 is a citizen of _____

  If Defendant 1 is a corporation,

  Defendant 1 is incorporated under the laws of  CALIFORNIA            (name of state or foreign nation).

  Defendant 1 has its principal place of business in  CALIFORNIA       (name of state or foreign nation).

  *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   42 U.S.C. § 1981-CIVIL RIGHTS ACT OF 1986;

Supporting facts:

1. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

2. Defendants were acting under color of State law in their actions which occurred at all relevant times to this action.

3. This Claim One is being leveled against Defendants in their individual and official capacities, as employees of UBER Technologies Inc, for intentionally implementing and enforcing hiring practices and policies that subject Blacks and Latinos to "Disparate Treatment."

4. Sometime in early January 2017, Plaintiff applied for a driving partnership with UBER

4

Technologies Inc., At the time he applied, Plaintiff had a valid driver's license, insurance on his vehicle, and registration. No specialized skills are needed for the position in which he applied for. On January 9, 2017, Plaintiff purchased a vehicle that met the criteria for the position.

5. On January 13, 2017, Plaintiff received an e-mail from Defendant that was captioned, "Pre-Adverse Action Notice," notifying him that Defendants had received a copy of Plaintiff's criminal history report, in connection with his proposal to enter into an Independent Contractor Agreement relationship.

6. Defendants ordered said criminal history report from "Checkr, Inc.", located at 2505 Mariposa St., San Francisco CA 94110."

7. Defendants enclosed a "Summary of Rights" under applicable law.

8. Defendants informed Plaintiff that they would be completing a review of his contract proposal within the next few days, and may not decide to accept, based in whole or in part on the information contained within that report.

9. Defendants made it clear that the specific records that may disqualify Plaintiff from entering into an Independent Contractor relationship with the company is any "unacceptable violation within the past 7 years."

10. On that same day, January 13, 2017, Plaintiff received an e-mail from Checkr, Inc., that was captioned, "Background Check Notification," notifying Plaintiff that they "were reporting criminal information related to him that may be adverse," and

**STATEMENT OF CLAIMS (cont.):**

confirmed that Defendants had received a copy of Plaintiff's criminal history report, and that if he had any questions regarding the status of his application, to contact Defendants directly.

11. Checkr, also attached a Summary of Rights Under the Fair Credit Reporting Act.

12. On January 25, 2017, after not receiving a response from Defendants regarding their decision on the status of his application, Plaintiff went to the UBER Greenlight Hub location in Denver and was contacted by Andrew Coulter.

13. Defendant Coulter informed Plaintiff that his application was denied based upon adverse information contained within his criminal background report that UBER had received from Checkr, Inc.

14. Plaintiff requested Defendant Coulter to be more specific, and explain which conviction was used to deny the application because all of his Felony convictions were remote, and over 10 years old, except for one that was four years old, and all of his Misdemeanor convictions were all over four years old.

15. Defendant Coulter refused to be specific regarding which conviction was specifically used, however, he explain that he would send Plaintiff a text message with a link to UBER's website, related to Partner Screenings, which outline UBER's policy on disqualification for Felony & Misdemeanor convictions, to assist Plaintiff in determining which conviction was used to disqualify him.

16. Plaintiff opened the link Defendant Coulter had sent him.

17. UBER's partner screening policy on criminal history states:

    a. "Disqualification if within the last 7 years, he/she is found to have convictions for 'any of the below' on their record":

        i. DUI or any other driving convictions.

        ii. Fraud

        iii. Reckless Driving

        iv. Hit & Runs

        v. Violent crimes (assault, battery, homicide)

        vi. Acts of Terror

        vii. Sexual Offenses

        viii. Crime involving property damage

        ix. Felony/misdemeanor theft (burglary, stealing, robbery, etc.)

        x. Fatal Accidents

        xi. Resisting/Evading arrest

        xii. ANY OTHER FELONY.

    b. "Disqualification if the potential driver-partner is found to have 'any of the below on their record' within the last 3 years":

        i. Driving on a suspended, revoked or invalid license

        ii. Driving with suspended, revoked or invalid insurance

18. Plaintiff had been convicted of "attempted" 2nd Degree Arson, a non-violent crime, in April 2013, approximately 3 years and 9 months prior to submitting the application to

**STATEMENT OF CLAIMS (cont.):**

contract as a driver-partner with UBER.

19. Plaintiff has not had any other convictions that would disqualify him within the last 7 years of applying on his record, nor any of the violations within the policy that would disqualify him within the last 3 years of applying for the job.

20. Defendants Kalanick and Hornsey, intentionally follow an absolute policy (blanket policy) of refusing consideration for employment to any person convicted of "any Felony" within 7 years.

21. Defendants Kalanick and Hornsey, do not take into consideration, the nature and seriousness of the crime in relation to the job sought; the time elapsing since the conviction; the degree of applicant's rehabilitation, and the circumstances under which the crime was committed, which is indicated by their failure to contact Plaintiff during the review process to inquire, and the "Any Felony" policy.

22. This policy violates 42 U.S.C.§ 1981, because this practice operates to disqualify Blacks and Latinos for employment at a substantially higher rate than Whites, is not job related, and subjects Blacks and Latinos to "Disparate Treatment."

23. Defendants turn away potential hires based upon criminal background checks, when they should consider each applicant individually. Then, evaluate whether his/her past arrest for the crime has any bearing on the job for which they have applied.

24. Plaintiff asserts, that in support of the proposition that the Defendants hiring practices and policies are discriminatory and subjects Blacks and Latinos to "disparate treatment", is the company's lack of diversity in comparison to other taxi and chauffeur

companies.

25. In 2015, UBER doubled the number of active drivers on its platform in the U.S. As it has grown, UBER had 327,000 active drivers in the U.S., more than doubling the 160,000 drivers it had active in 2014. As of 2017, during the time of the incident, it is believed that UBER likely has close to 1 million active drivers.

26. Plaintiff asserts, Whites make up 40.3% of UBER drivers, while Blacks make up 19.5% and Latinos make up 17.7% of UBER drivers.

27. These numbers are staggering in comparison to other Taxi and Chauffeur companies in the U.S., where Whites make up 26.2% and Blacks make up 31.6% of the industry.

28. These companies do not have the same hiring practices and policies as UBER, which refuses consideration of employment to any person, convicted of "Any Felony" within 7 years, without considering each applicant individually, and evaluating whether the past crime has any true bearing on the job applied for.

29. Plaintiff assert, more than 60% of the people in prison today are people of color. Black men are nearly six times more likely to be incarcerated than White men, and Hispanic/Latino men are 2-3 times as likely.

30. For Black men in their 30's, 1 in every 10 is incarcerated in prison or jail on any given day.

31. The rate of imprisonment per 100,000 people as of 2015, for Black men, is 2,613; opposed to 457 for White men.

32. The lifetime likelihood of imprisonment as of 2001, for Black men is 1 in 3, opposed to 1 in 17 for White men.

**STATEMENT OF CLAIMS (cont.):**

33. In Colorado alone, Blacks make up 3.8% of Colorado's population, but represent 19.4% of people in State Prison, opposed to Whites who make up 74.5% of Colorado's population, but only 46% of the state prison population. Latino's account for 17.1% of Colorado's population, but 31% of the State Prison population.

34. These statistics is staggering and support the proposition that UBER's hiring practices and policies, which automatically refuse consideration for employment to any person convicted of "Any Felony" within 7 years, is discriminative and subjects Blacks and Latinos to "disparate treatment".

35. It is truly unfathomable, that Defendants believe, that every single "non-violent" Felony Statute, that a person can be convicted of, out of the thousands of Statutes across the U.S. and here in Colorado, has any bearing on anyone driving a cab.

36. Although the employment practice in question is facially neutral, an employment test or practice which operates to exclude a disproportionate percentage of Blacks violates § 1981, and TITLE VII, unless the employer can establish that the practice is justified as a business necessity.

*Griggs v. Duke Power Co., 401 U.S.C.424, 431(1971); See Green v. Missouri Pacific Railroad Co., 523F 2d. 1290, 1296(8th Cir. 1975); See Boston Chapter N.A.A.C.P. Inc., v. Beecher, 504 F. 2d 1017, 1019 (1st Cir., 1974); Wallace v. Debron Corp., 484 F. 2d 674,675 (8th Cir. 1974), United States v. Georgia Power Co., 474 F. 2d 906, 911 (5th Cir. 1973); Gregory v. Litton Systems, Inc., 316 F. Supp. 401, 403 (C.D. Cal, 1970), aff'd, 472 F. 2d 631*

*(9th Cir. 1972).*

37. Once a prima facie case of substantially disparate impact is made, the burden shifts to the employer to justify the employment practice or test as a business necessity. See *Green v. Missouri Pacific Railroad Co., 523 F. 2d 1290, 1296 (8th Cir. 1975); McDonnell Douglas Corp. v. Green, 411 U.S. 792(1973); Rogers v. International Paper Co., 510 F. 2d 1340, 1348-49 (8th Cir. 1975); Hester v. Southern Ry. Co., 497F. 2d 1374, 1381 (5th Cir. 1974).*

38. Defendants Kalanick and Hornsey, implemented the "Any Felony" practice, knowing that the policy would subject Blacks and Latinos to "disparate treatment" in order to keep the face of the company primarily White.

39. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.

**CLAIM TWO**: TITLE VII of the Civil Rights Act of 1964 and 1991;

_____

Supporting facts:

40. Plaintiff hereby incorporates by reference all paragraphs of the Complaint as if fully set forth herein.

41. Defendants were acting under color of State Law in their actions which occurred at all relevant times to this action.

42. This Claim Two is being leveled against Defendants in their individual and official capacities as employees of UBER Technologies Inc., for implementing and enforcing hiring practices and policies that has a "disparate impact" on Blacks and Latinos.

43. Plaintiff is a so-called "African-American/Black" man, which makes him a member of a protected class.

44. Plaintiff assert, that he is qualified for the position in which he applied for. The position of driving a cab, does not require a specialized set of skills.

45. At the time of the incident, Plaintiff had purchased a new vehicle that met the requirements; had his license; valid insurance and registration; and had no traffic infractions, to include but not limited to, driving on a suspended, revoked or invalid license, or driving on a suspended, revoked or invalid insurance/registration; within 3 years of submitting his application. Nor had he any DUI convictions or any drug-related convictions, reckless driving, or hit and runs, within 7 years of submitting his application.

46. Plaintiff further assert, that with the exception of his non-violent conviction for

attempted arson, that was almost 4 years old at the time of his application, he hasn't had a single Felony conviction, within 7 years of submitting the application, and that his non-violent Felony conviction has no bearing on him driving a cab, and seeing as how he has been employed by two different companies in the past several years, and currently employed, where the same conviction at issue had no bearing on the job he applied for.

47. Most importantly, Plaintiff knows people who were hired by other cab companies, with felony convictions, more recent than his conviction, where the convictions had no bearing on the job being applied for.

48. As argued above, in his section 1981 claim, Defendants Kalanick and Hornsey follow an absolute policy of refusing consideration of employment to any person convicted of "Any Felony" within 7 years violates Title VII of the Civil Rights Act of 1964 and 1991, because this practice operates to disqualify Blacks for employment at a substantially higher rate than Whites, is not job related, and has a "desperate impact" on Blacks and Latinos.

49. Defendants Kalanick and Hornsey do not take into consideration the nature and seriousness of the crime in relation to the job sought; the time elapsing since the conviction, the degree of applicant's rehabilitation, or the circumstances under which the crime was committed, which is indicated by their "Any Felony" policy, which is an absolute disqualification for employment of any person convicted of "any felony."

50. Defendants should consider each applicant individually and evaluate whether his/her past arrest or crime has any bearing on the job applied for.

51. For the reasons outlined in the above-mentioned paragraphs, show Plaintiff suffered an adverse employment action.

52. Finally, the statistics that Plaintiff outlined in ¶ 25-34, show that the adverse action occurred under circumstances giving rise to an inference of discrimination.

53. These statistics support the proposition that UBER's hiring practices and policies, disqualifying agents without consideration, for "Any Felony," is discriminative, and have a "disparate impact" on Black and Latino applicants.

54. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiff's injuries.

**CLAIM THREE**: 42 U.S.C§1983—Fourteenth Amendment- Equal Protection

Supporting Facts:

55. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

56. Defendants were acting under color of State Law, in their actions and inactions, which occurred at all relevant times to this action.

57. This Claim Three is being leveled against Defendants in their individual and official capacities as employees of UBER Technologies, Inc. for intentionally implementing and enforcing hiring practices and policies, that have a "disparate impact" on both Blacks and Latinos.

58. Defendants Kalanick and Hornsey, both follow an absolute policy of refusing consideration for employment to any person convicted of "Any Felony," for the sole purpose of minimizing the number of Blacks and Latinos within UBER's ranks, in violation of the equal protection clause of the Fourteenth Amendment.

59. This absolute policy and practice operates to disqualify Blacks and Latinos from employment at a substantially higher rate than Whites, is not job related, and has a "disparate impact" on Blacks and Latinos.

60. Plaintiff assert, that Defendants' "Any Felony" policy; Defendants' absolute refusal to consider applicants individually, to determine applicant's degree of rehabilitation, and to evaluate whether or not his/her crime has any bearing on the position which they are applying for, and the statistics outlined in paragraphs 25-34; support the proposition of Defendants intent, their conduct and practices are in fact discriminative, and their

15

policies and practices have a "disparate impact" upon Blacks and Latinos.

61. Defendants, as described above, were acting recklessly, knowingly, intentionally,

willfully and wantonly, causing Plaintiff's injuries.

**CLAIM FOUR:** <u>42 U.S.C. §1983—Fourteenth Amendment—Due Process</u>

Supporting Facts:

62. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth in.

63. Defendants were acting under color of State Law, in their actions and inactions, which occurred at all relevant times to this action.

64. This Claim Four is being leveled against the Defendants in their individual and official capacities, as employees of UBER Technologies, Inc, for the aforementioned acts and omissions, that denies Blacks and Latino citizens of life, liberty, or property interest, without being given "notice" and the opportunity to be heard.

65. Defendants Kalanick and Hornsey, follow an absolute policy of refusing consideration for employment to any person convicted of "Any Felony."

66. Although Defendants Kalanick and Hornsey, used information in Plaintiff's criminal history, that was sent to them from a consumer reporting agency, Defendant UBER failed to articulate what exact information was then being used against Plaintiff.

67. Under the Fair Credit Reporting Act (FCRA), Plaintiff has a right to be told if information within his file is being used against him, in denying his application for employment, as well as the right to dispute incomplete or inaccurate information.

68. Defendants Kalanick and Hornsey, after receiving Plaintiff's criminal history report, and denying his application for employment, based upon that report, never contacted Plaintiff to inform him, that his application for employment was denied, let alone the information that it had used within the report to reach the decision in which to deny his

application, which denied Plaintiff his rights under the FCRA, which in turn also denied him his rights to Due Process of Law.

69. Plaintiff sent several emails to Defendant UBER, for its Human Resources Department, which is headed by Defendant Hornsey, to determine the status of his application, then after not receiving any response, Plaintiff went to the UBER Greenlight Hub location in Denver, Colorado, to determine the status of his application.

70. Defendant Coulter confirmed that Plaintiff's employment application had been denied, based upon information received from his criminal history report, but would not be specific, and explain which conviction was used, but did send Plaintiff a message via e-mail, related to UBER's policy on disqualification for Felony and Misdemeanor convictions, explaining that it should help Plaintiff in determining which conviction was used, being that UBER goes back a period of 7 years for Felonies, and 3 years for Misdemeanor convictions.

71. Plaintiff assert, that this form of communication which information was used in applicant's report to deny an application, violates the FCRA, where anyone that uses a credit report or any other type of consumer report to deny an application for employment, must tell the applicant the specifics of what the adverse decision was based upon.

72. Defendants as described above, were acting recklessly, knowingly, willfully and wantonly causing Plaintiff's injuries.

**CLAIM FIVE**: <u>State Tort—Negligence</u>

Supporting Facts:

73. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

74. Defendants were acting under color of State Law, in their actions and inactions, which occurred at all relevant times to this action.

75. This Claim Five is being leveled against Defendants in their individual and official capacities as employees of UBER Technologies, Inc., for intentionally implementing and enforcing hiring practices and policies that subject Blacks and Latinos to "disparate treatment" and has a "disparate impact" on Blacks and Latinos.

76. Defendants have a legally imposed duty or a standard of conduct that they failed to adhere to.

77. Defendants disregarded Plaintiff's rights and fundamental protections under State and Federal Law.

78. Defendants Kalanick and Hornsey, follow an absolute policy of refusing consideration for employment to any person convicted of "Any Felony", which operates to disqualify Blacks and Latinos for employment at a substantially higher rate than Whites, is not job related, has a disparate impact on Blacks and Latinos, and subjects them to "disparate treatment", is tantamount to negligence.

79. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiff's injuries.

**CLAIM SIX:** <u>State Tort—Negligence Per Se;</u>

Supporting Facts:

80. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

81. Defendants were acting under color of State Law in their actions and inactions, which occurred all at relevant times to this action.

82. This Claim Six is being leveled against the Defendants in their individual and official capacities as employees of UBER Technologies, Inc. for intentionally implementing and enforcing hiring practices and policies, that subject Blacks and Latinos to "disparate treatment" and has a "disparate impact" on Blacks and Latinos.

83. Defendant has a legally imposed duty or a standard of conduct that they failed to adhere to.

84. Defendants disregarded Plaintiff's rights and fundamental protections under State and Federal Law.

85. Defendants Kalanick and Hornsey, follow an absolute policy of refusing consideration for employment to any person convicted of "Any Felony", which operates to disqualify Blacks and Latinos for employment at a substantially higher rate than Whites; is not job related, has a "disparate impact" on Blacks and Latinos, and subjects Blacks and Latinos to "disparate treatment", in disregard to State and Federal statutes and laws, ordinances, and regulations, is tantamount to Negligence Per Se.

86. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiff's injuries.

**CLAIM SEVEN**: State Tort—Negligent Infliction of Emotional Distress;

Supporting Facts:

87. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

88. Defendants were acting under color of State Law in their actions and inactions which occurred at all relevant times to this action.

89. This Claim Seven is being leveled against the Defendants in their individual and official capacities as employees of UBER Technologies Inc. for intentionally implementing and enforcing hiring practices and policies, that subject Blacks and Latinos to "disparate treatment" and has a "disparate impact" on Blacks and Latinos.

90. Defendants have a legally imposed duty or standard of conduct that they failed to adhere to.

91. Defendants disregarded Plaintiff's rights and fundamental protections under State and Federal Law.

92. Defendants Kalanick and Hornsey follow an absolute policy of refusing consideration for employment to any person convicted of "Any Felony," which operates to disqualify Blacks and Latinos for employment at a substantially higher rate than Whites, is not job related, has a "disparate impact" on Blacks and Latinos, and subject Blacks and Latinos to "disparate treatment".

93. Defendants, as mentioned above, failed a legal duty to use reasonable care to avoid causing emotional distress to Plaintiff.

94. Defendants as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiff's injuries.

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

95. Appropriate declaratory and other injunctive and/or equitable relief as to each Defendant in their individual and official capacities, to change their "Any Felony" policy; Pay Plaintiff back wages, and to pay for the vehicle he purchased for the job;

96. Compensatory damages, including damages for emotional distress, mental anguish, humiliation, and other pain and suffering on all claims allowed by law, and in an amount to be determined at trial from all Defendants named in their individual and official capacities;

97. Punitive damages on all claims allowed by law and in an amount to be determined at trial from all Defendants named in their individual and official capacities;

98. A trial by Jury;

99. Pre and Post-Judgment interest at the lawful rate; and Any further relief the Court deems just, proper and equitable.

## F.   PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)
W.T. Handy Jr.

03-10-18
(Date)

(Revised December 2017)

24

<u>CERTIFICATE OF MAILING</u>

I hereby certify that on this <u>**11TH**</u> day of <u>**MARCH 2018**</u>, A true and correct Copy of the foregoing and attached <u>**COMPLAINT**</u> was deposited into the United States mail, postage prepaid by First Class postage, addressed to the following:

**<u>UNITED STATES DISTRICT COURT</u>**
**<u>901 19TH STREET</u>**
**<u>DENVER, CO 80294</u>**

By: _____     On: _3 - 11 - 18___